UNITED STATES DISTRICT COURT
Eastern District of Texas



| CRAIG CUNNINGHAM, Plaintiff, v. Air Voice, Inc. Defendant | § § § § § § § § § § | Clerk, U.S. District Court Texas Eastern <br><br> Civil Case No. 4:19cv96 |
|---|---|---|

FILED FEB 0 6 2019

### Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. Air Voice, Inc., is a Wyoming corporation that can be served via Registered agent Incorp Services, Inc., 1910 Thomas Ave., Cheyenne, WY 82001 or Corporate Officer Vivek Babbar 42480 Benfold Sq., Brambleton, VA 20148 or 666 Plainsboro Road, Suite 1335 Plainsboro NJ, or 918 Waterview Way, Apt O Champaign, IL 61822.

3. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

### JURISDICTION AND VENUE

4. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas

Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

5. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because the company has knowingly placed multiple calls to the Plaintiff while knowing that the Plaintiff lived and resided in Texas even after the Plaintiff had filed suit against them referencing the lawsuit filed and the Plaintiff's information.

6. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed originated in Wyoming and the defendants reside in this district or contracted with Wyoming entities to launder money.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

7. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without

the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the

TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

20. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

21. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

22. Rachel with Card Services is the bane of the existance of many consumers. These are calls long since prosecuted by the FTC that make fraudulent, misleading, false promises and exaggerated claims to consumers. These scams have taken place for years and continue to this day. Air Voice, Inc. Mukesh Mahajan, Vivek Babbar, Dheer Gulatiare ringleaders of this scam and have called thousands of consumers including the Plaintiff in violation of the TCPA.

23. The Plaintiff sued Air Voice, Inc in Wyoming 2:18-cv-00182 in November 2018, and despite this additional calls continued taunting the Plaintiff about his lawsuit.

24. The calls alleged were placed by or on behalf of Air Voice, Inc., to the Plaintiff in this case without consent and not related to any emergency purpose as alleged in this complaint. Air Voice Inc to placed calls to the Plaintiff's cell phone that were

initiated using an automated telephone dialing system and contained a pre-recorded message

### Air Voice Inc TCPA violations

25. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of Air Voice Inc.

26. In September and October 2018, the Plaintiff recieved multiple calls from multiple spoofed or non-working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's. These calls were not related to an emergency purpose or any consent provided by the Plaintiff.

27. *An example of a pre-recorded message was "This is not a solicitation call. Hi, this is the credit card holder reward center with Visa Mastercard. We have been monitoring your credit card accounts for the last 6 months. Congratulations on your excellent payment history... "* This call was from 615-331-7890, which is a local area spoofing designed to trick consumers to pick up the phone by making it appear to be a local number calling the Plaintiff, to 615-331-7262 on 10/23/2018.

28. Each and every call was initiated using an automated telephone dialing system as there was a 3-4 second pause of dead air before the call connected and the pre-recorded message started.

29. In total, the Plaintiff received at least 47 calls by or on behalf of Air Voice Inc.

30. On October 24, 2017, the Plaintiff had a charge appear on his credit card from Air Voice, Inc. in the amount of $1,200 for the card ending in 8565 (See Screenshot Ex A). The Plaintiff never authorized this charge by Air Voice, Inc., and never spoke or

interacted with anyone associated with Air Voice, Inc., before the charge was made. The $1200 charge corresponds to an amount the individuals with "card services" claimed to charge the Plaintiff on 10/23/2018 and was later confirmed that the "Card services" individuals had placed a charge on the Plaintiff's card through Air Voice Inc.

## Alleged Calls

| Date/Time | Type | Number | Duration | Direction | Network | Calls to 331-7262 x 40 |
|---|---|---|---|---|---|---|
| 20/08/2018 3:18 PM | call | (615) 331-7890 | 44s | inbound | cell | |
| 20/08/2018 3:18 PM | call | (615) 331-7890 | 3s | inbound | cell | |
| 13/08/2018 9:16 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 10/08/2018 3:16 PM | call | (615) 331-7890 | 1m 11s | inbound | cell | |
| 09/08/2018 4:09 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 09/08/2018 1:19 PM | call | (615) 331-7890 | 18s | inbound | cell | |
| 08/08/2018 8:41 PM | call | (615) 331-7890 | 29s | inbound | cell | |
| 25/09/2018 1:05 PM | call | (615) 331-7890 | 16s | inbound | cell | |
| 24/09/2018 6:18 PM | call | (615) 331-7890 | 48s | inbound | cell | |
| 19/09/2018 7:54 PM | call | (615) 331-7890 | 1m 27s | inbound | cell | |
| 13/09/2018 9:41 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 11/09/2018 6:11 PM | call | (615) 331-7890 | 1m 16s | inbound | cell | |
| 29/10/2018 2:51 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 23/10/2018 5:43 PM | call | (615) 331-7890 | 51m 26s | inbound | cell | |
| 18/10/2018 9:01 PM | call | (615) 331-7890 | 3m 17s | inbound | cell | |
| 02/10/2018 1:23 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 15/11/2018 4:41 PM | call | (888) 579-9909 | 35s | inbound | cell | |
| 15/11/2018 3:54 PM | call | (888) 579-9909 | 36m 18s | inbound | cell | |
| 15/11/2018 1:26 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 08/11/2018 3:14 PM | call | (615) 331-7890 | 40s | inbound | cell | |
| 06/11/2018 1:21 PM | call | (615) 331-7890 | 52s | inbound | cell | |
| 02/11/2018 7:36 PM | call | (615) 331-7890 | 1m 10s | inbound | cell | |
| 01/11/2018 2:13 PM | call | (615) 331-7890 | 49s | inbound | cell | |
| 26/12/2018 8:13 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 17/12/2018 3:37 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 07/12/2018 9:44 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 31/01/2019 7:32 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 22/01/2019 2:57 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 17/01/2019 3:59 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 11/01/2019 4:06 PM | call | (615) 331-7890 | 33s | inbound | cell | |
| 10/01/2019 9:39 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 04/01/2019 4:25 PM | call | (615) 331-7890 | 1m 9s | inbound | cell | |
| 06/12/2018 | call | 615-331-7890 | 54 | inbound | cell | |
| 06/07/2018 | call | 615-331-7890 | 69 | inbound | cell | |
| 06/05/2018 | call | 615-331-7890 | 69 | inbound | cell | |
| 06/04/2018 | call | 615-331-7890 | 69 | inbound | cell | |

| Date | Type | Number | Duration | Direction | Device | |
|---|---|---|---|---|---|---|
| 05/29/2018 | call | 615-331-7890 | 69 | inbound | cell | |
| 05/25/2018 | call | 615-331-7890 | 22 | inbound | cell | |
| 05/07/2018 | call | 615-331-7890 | 1081 | inbound | cell | |
| 04/23/2018 | call | 615-331-7890 | 70 | inbound | cell | |
| | | | | | | Calls to 212-9191 x 7 |
| 13/12/2018 9:25 PM | call | (615) 403-7890 | 44s | inbound | cell | |
| 22/01/2019 1:59 PM | call | (615) 403-7890 | 6s | inbound | cell | |
| 01/08/2019 | call | (615) 403-7890 | 4 | inbound | cell | |
| 12/14/2018 | call | (615) 403-7890 | 37:21 | inbound | cell | |
| 11/23/2018 | call | (615) 403-7890 | 32:32 | inbound | cell | |
| 07/09/2018 | call | (615) 403-7890 | 13 | inbound | cell | |
| 23/11/2018 8:35 PM | call | (615) 212-7890 | 32m 56s | inbound | cell | |

31. On 08/25/2018, the Plaintiff called 609-269-4672 a number associated with Air Voice Inc., but it was a Google Voice number and left a message. Vivek Babbar is the CEO and corporate officer of Air Voice Inc. Vivek indicated that his company charged the Plaintiff's card for debt relief services, but the Plaintiff never authorized any transaction with Vivek or Air Voice Inc. The Plaintiff was emailed financial records showing the transaction and subsequent refund from the perspective of Air Voice, Inc., confirming the transaction was made and matched the charges on the Plaintiff's credit card.(See Ex B and C) 1

**Air Voice Inc's. knowing and Willful Telemarketing regulation violations**

32. Air Voice Inc.,and did not have a written do-not-call policy while it was sending calls to Mr. Cunningham indicated by continued calls after the Plaintiff had sued them.

33. On information and belief, Air Voice Inc. did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

34. Calls on behalf of Air Voice Inc., did not provide Mr. Cunningham with the name of

the individual caller or the name of the person or entity on whose behalf the call was being made.

35. Each and every call placed on behalf of and for the benefit of Air Voice Inc.,

36. Mr. Cunningham has a limited data plan. Incoming text messages chip away at his monthly allotment.

37. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls fromAir Voice Inc., consumed part of this capacity.

38. No emergency necessitated the calls

39. Each call was sent by an ATDS.

40. Even after the Plaintiff sued Air Voice Inc., additional calls continued to the Plaintiff's cell phone with the agents identifying themselves as being part of Air Vocie inc and taunting the Plaintiff with regards to the previously filed lawsuit and cursing at the Plaintiff. .

41. One such call occured on 11/23/2018 from 615-212-7890 to 615-212-9191. The call was initiated using an automated telephone dialing system or pre-recorded message. The agent who identified himself as "Matty" stated his company name was "S U C K Financial" and asked the Plaintiff *"You want to sue me?"* and stated *"Why don't you suck my cock"* and stated *"I've got a huge cock for you motherfucker"* and added *"You are trying to sue me? I'll sue you motherfucker"* This references the previously filed Air Voice lawsuit.

42. As another example on 12/14/2018, the Plaintiff recieved a call from 615-403-7890 to 615-212-9191. This call contained a pre-recorded message and was initiated using an automated telephone dialing system. In this call, the agent stated *"so you are Craig,*

*Craig Cunningham, I have your address now. So you are trying to sue me? You are trying to sue us? I'm from Air Voice, sir."* The agent stated *"I have your letter you sent us on November 5, 2018...clerk of court..."* apparently reading off the lawsuit that the Plaintiff had filed and served to them

43. These calls and the repeated instances of them for months after the Plaintiff filed the lawsuit indicates that all the calls were knowing and willfully placed and that the defendants lack an internal do not call policy and have not trained their agents on the use of an internal do-not-call policy list in violation of 47 USC 227(c)(5).

**Violations of the Texas Business and Commerce Code 305.053**

44. The actions of Air Voice Inc. violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by Air Voice Inc., violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5).

45. The calls by Air Voice Inc., violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### I. FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

**(Against All Defendants)**

1. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making

non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

  b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

  c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and ASI, LLC's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq.

13. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

### IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against Defendant Air Voice Inc., as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 47 calls.

E. An award of $1,500 per call in statutory damages arising from violations of the Texas Business and Commerce code 305.053 for 47 calls

F. An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

G. An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075

2/6/2019